IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HAJUQUAN WILLIAMS, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br>v.<br><br>CHEMSTREAM, INC.,<br><br>Defendant. | Civil Action No. 2:24-cv-00272-MRH |

**DEFENDANT CHEMSTREAM INC.'S REPLY IN SUPPORT
OF MOTION FOR JUDGMENT ON THE PLEADINGS**

Chemstream, Inc. demonstrated in its Motion for Judgment on the Pleadings (the "Motion") that the pleadings filed in this case—including documents attached or integral to the claims addressed therein—establish that Plaintiff Hajuquan Williams over-reported his time worked, causing Chemstream to overpay him by more than $15,000. Because Chemstream paid Williams *more* wages than were plausibly due, Williams' claims fail and should be dismissed. Notably, Williams does not try to dispute that he over-reported roughly 750 hours, nor does he contest Chemstream's argument that his claims fail as a result. His only arguments against dismissal are procedural, focusing on what this Court can consider and advocating to delay the inevitable. Delay makes no sense because Chemstream's records make clear that Williams *never* performed "2 to 4 hours a day (or 14 to 28 hours a workweek)" of uncompensated work, as he alleged twice in his Class Action Complaint. In fact, Williams could not have worked 14 hours of uncompensated work *total* during his 11 months at Chemstream. As for Williams' procedural arguments, they fail for the reasons discussed below, and Chemstream requests that the Court grant its Motion for Judgment on the Pleadings and dismiss Williams' Complaint with prejudice.

I.   **The Court May Consider Documents Attached to Chemstream's Amended Answer and/or Which Are Integral to the Allegations in Williams' Complaint**

Chemstream established in its Motion that, where documents are attached or otherwise "integral to" the pleadings, the Court may consider those documents in ruling on a Rule 12(c) motion for judgment on the pleadings. Chemstream Br. 8-10. Applying that rule, the Court properly may consider (a) Williams' timecards, attached as Tab A to Chemstream's Amended Answer (Dkt. 14-1); (b) raw GPS Data showing the location of Williams' truck, attached as Tab B to Chemstream's Amended Answer (Dkt. 14-2)[1]; and (c) Williams' Pay Statements, attached as Tab 1 to Chemstream's Motion (Dkt. 21-1).[2] Williams invited consideration of these documents by specifically stating in his Complaint that they would "reflect the number of hours [he] *actually* worked each week" and would allow him to establish and value his claims. Compl. ¶¶ 143-147. Williams does not challenge these documents nor explain how they do not show he was overpaid for hours—using Williams' own words from his pleading—"*actually* worked." Rather, Williams pleads with the Court (without supporting authority) to ignore them altogether and, in so arguing, demonstrates exactly why the Court should consider the documents.

Williams first argues that the Court should not consider the payroll or GPS Data records attached to Chemstream's Answer because they are not "written instruments" for the purpose of Rule 10(c). As Williams would have it, the only types of exhibits that ever may be incorporated into a pleading are written contracts, promissory notes, and the like—but that is not the law. No court has adopted the rigidly narrow definition of "written instrument" that Williams demands, and, on at least one occasion, the U.S. Court of Appeals for the Third Circuit *explicitly rejected* it.

---

[1] An annotated version of this GPS Data was attached to Chemstream's Motion as Tab 2.

[2] Chemstream also attached to its Motion (a) at Tab 3, a demonstrative summary chart showing Williams' hours *actually* worked by day; and (b) at Tab 4, an exemplar regular-rate calculation for the duration of Williams' employment with Chemstream. These are demonstrative exhibits, prepared as part of Chemstream's analysis of Williams' pay records and GPS Data records in order to assist the Court in reviewing these materials.

In *Barnard v. Lackawanna Cnty.*, 696 F. App'x 59 (3d Cir. 2017), the Court considered whether a district court appropriately considered five exhibits attached to a defendant's answer in ruling on a Rule 12(c) motion, one of those exhibits being the plaintiff's "pay record for the relevant period." The plaintiff challenged the district court's reliance on those documents, "arguing that the exhibits do not constitute 'written instruments' that may be properly incorporated into the pleadings." *Id*. at 60.  The Circuit Court disagreed, finding that because the "exhibits concisely set out the parties' respective rights and the record of the underlying dispute, they are 'documentary evidence' constituting 'written instruments' of the kind contemplated by Rule 10(c)" and properly before the district court in granting the defendant's Rule 12(c) motion. *Id*. at 61.  The same is true here. Williams is a wage-and-hour plaintiff who asserts a number of facts relating to what, when, and for what hours he was paid (or allegedly unpaid), as well as the manner in which his payment was calculated.  As in *Barnard*, this Court may consider these probative documents that (in Williams' words from his own pleading) "reflect the number of hours [he] *actually worked*" in each week.

Even applying a more restrictive definition of "written instruments" than the Third Circuit did in *Barnard*, Williams is wrong to contend that payroll and GPS Data records are not "written instruments" because they do "not evidence any legal rights or duties."  Williams Opp. at 4. Williams asserted in his Complaint that Chemstream's records, first, "reflect the number of hours" Chemstream employees "recorded" and "*actually* worked each week," Compl. ¶¶ 143, 144; second, show whether, how, and in what amount it paid "per diems" to its employees, *id*. ¶ 145; and third, would allow to "be calculated" the "back wages" allegedly owed to Williams and others, *id*. at ¶¶ 146-147.  Each of these issues is integral to the wage-and-hour rights Williams asserts in this litigation, and each of the documents related thereto are part of "the record of the underlying

dispute" and critical to proving (or, in this case, disproving) that he is entitled to compensation. The records properly are before the Court, which should consider them at this time.

With Williams' first argument failing, Williams alternatively argues that the Court should not consider Williams' payroll or GPS Data records because they are not "integral to or explicitly relied upon" in his Complaint. Williams Opp. at 5-7. As to whether the documents are integral to his claims, Williams simply states, without explanation, that they are not. As to his reliance on them, Williams insists that, because he only stated the documents' existence, and never "relied upon" them, they cannot be considered in ruling on Chemstream's Rule 12 Motion. He is wrong on both points.

First, records showing "the number of hours [he] *actually* worked each week" are inherently "integral to" wage-and-hour claims. *See Pontes v. Rowan Univ.*, No. 20-2645, 2021 WL 4145119, at *2 (3d Cir. Sept. 13, 2021) (affirming district court's decision to consider "payroll records" in ruling on Rule 12(b) motion because "payroll records are integral to the harm [plaintiff] alleges, and he likely relied on those records to discover that [the employer] withheld his wages"); *Malkovskiy v. Shaw Grp., Inc.*, No. CV 11-2227, 2012 WL 13034896, at *1 (D. N.J. June 29, 2012) (finding that "payroll records … are integral" to plaintiff's wage-and-hour complaint and considering them in ruling on employer's Rule 12(c) motion). As *Pontes* Court explained, a wage-and-hour plaintiff necessarily relies on payroll records in order to prove underpayment of wages. In this case, the records prove wages were *overpaid*.

Despite initially denying as much, Williams appears to admit that the payroll and GPS Data records are, in fact, integral to his claims in demanding discovery related to those records. Williams Br. at 9-10. Williams insists that he requires "discovery" related to those records in order to survive dismissal. *Id*. If payroll and GPS Data records were not integral to Williams' claims,

he presumably would not demand that the Court delay ruling on Chemstream's Motion to permit discovery about those records and their application to the case.

Second, and separately, Williams cites zero authority to support his fictitious distinction between explicitly discussing and stating in his Complaint the applicability and value of his payroll and GPS Data records, on one hand, and "relying upon" the same, on the other. Williams Opp. at 6. There is none. *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 560 (3d Cir. 2002) (allowing court to consider documents "if they are referred to in a plaintiff's complaint" and relate to his claims). Williams is the master of his own Complaint and cannot suppress documentary facts because they now prove problematic to his case. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (courts may rely on integral documents in order to prevent "a plaintiff with a legally deficient claim" from "surviv[ing] a motion to dismiss simply by failing to attach a dispositive document on which it relied"). Even so, Williams' argument that he did not "rely" on these documents is nonsense. He told this Court he would rely on Chemstream's records that "reflect the number of hours [he] *actually worked* each week," allegedly to prove his claims and value his purported damages. If those factual allegations served him no purpose, he should have never mentioned them in his Complaint. *See* Fed. R. Civ. P. 8(a)(2); *see also Jackson v. Taylor*, No. 3:11-CV-265-KRG-KAP, 2011 WL 13176511, at *1 (W.D. Pa. Nov. 17, 2011) (subsequent history omitted) ("When a plaintiff chooses to plead specifics and those specifics show that he has no claim, he has pleaded himself out of court.").

Ultimately, the Court may consider Williams' payroll and GPS Data records attached to Chemstream's Amended Answer, which are "part of the pleading for all purposes," *see* Fed. R. Civ. P. 10(c); and attached to Chemstream's Motion, as all documents are (i) records identified and relied upon in Williams' Complaint and/or (ii) integral to his claims against Chemstream.

## II. The Court Should Not Convert Chemstream's Rule 12(c) Motion Into a Rule 56 Motion, and No Discovery is Needed

Williams asserts that, to the extent the Court converts Chemstream's Motion into one for summary judgment, he must be permitted to "take at least some discovery," specifically of "the documents introduced by Chemstream," and contrary to his argument that the documents are not integral to his claims. Williams Opp. at 9. Williams, however, fails to give this Court any reason to convert Chemstream's Motion in the first instance—and, as a matter of law, the Court should not. The general rule is that conversion is appropriate only when "a court considers matters outside the pleadings" in ruling on a Rule 12 motion and on the basis that a "plaintiff has not had an adequate opportunity to respond to" such extraneous evidence. *Ettinger & Assocs., LLC v. Hartford/Twin City Fire Ins. Co.*, 22 F. Supp. 3d 447, 450 (E.D. Pa. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). An "exception" to this rule applies when the documents in question are integral to the claims in a plaintiff's complaint. *Id*.

As set forth above, Chemstream does not ask the Court to consider any material not properly before it, including documents attached to Chemstream's pleading. Williams' payroll and GPS Data records are attached to Chemstream's Amended Answer, a pleading by definition, *see* Fed. R. Civ. P. 7(a). The same documents are integral to the claims set forth in Williams' Complaint. Beyond that, there is no risk that Williams actually is surprised by these records. Beyond the fact that Williams referred to these and similar documents in his own Complaint, Williams already reported to this Court in the 26(f) Report that counsel has had Chemstream's records and position as to Williams' time-reporting fraud for over a month. *See* Fed. R. Civ. P. 26(f) Report of the Parties (Dkt. 16) at 3. He and his counsel could have attempted to further confer with Chemstream or request clarifying or additional information, but they chose to do

neither.  Instead, from the moment Chemstream revealed evidence of fraud, they have devoted all their resources exclusively toward convincing this Court to decline jurisdiction over the case itself or ignore the contents of the pleadings.  Chemstream's Motion requires no conversion in the first instance, and Williams' own lack of engagement only further justifies ruling on the Motion as it is presented by Chemstream.

That all said, Chemstream is prepared to engage in discovery related to Williams' individual claims—and, in fact, Chemstream *requested* that opportunity, notably over Williams' objection, in the parties Rule 26(f) Report.  Chemstream specifically proposed to Williams and the Court that the parties first "address the merits of Williams's individual claims" and that all "class-certification discovery and briefing be held in abeyance" pending resolution of those issues.  *See* Fed. R. Civ. P. 26(f) Report of the Parties (Dkt. 16) at 5.  It is Williams who "disagrees that discovery in this case should address merits first and class second[,]" another tactic to delay the inevitable.  *Id*.  Chemstream welcomes Williams' reverse-course on this issue, is prepared to engage in discovery related to Williams' individual claims if the Court deems it appropriate, and—to the extent the Court does not grant Chemstream's present Motion—reiterates its request that the Court implement a case schedule providing for individual discovery related to Williams' claims in advance of any class-related discovery.

**III.     Williams Cannot Contest Chemstream's Interpretation of Payroll and GPS Data Records and Lacks Any Argument in Support of His Legal Theory**

As Chemstream demonstrated in its Motion and accompanying submissions, Williams' unpaid-overtime and regular-rate claims fail because Chemstream's records—which Williams referenced and of which he invited scrutiny, *see* Compl. ¶¶ 143-147—show that Williams defrauded Chemstream by over-reporting his time worked, resulting in unearned compensation of far more than he could possibly recover on any theory alleged in his Complaint.  *See* Chemstream

Br. at 10-17. Williams does not respond *at all* to his fraud exposed by Chemstream, tacitly conceding that Chemstream's payroll and GPS Data records accurately show that Williams misled Chemstream into paying him wages for time he spent at a baseball field, liquor store, local YMCA, or any number of other places unrelated to his job. Williams Opp. at 7-9. He instead argues that the Court should ignore his fraud, and his own Counsel's failure to investigate it, along with its case-dispositive implications, and consider only the allegations in his Complaint. Williams' silence as to Chemstream's arguments speaks volumes, and his inability (or refusal) to prepare any sort of response concedes those arguments and justifies dismissal with prejudice. *See Rothermel v. Dauphin Cnty., Pennsylvania*, No. 1:16-CV-1669, 2017 WL 4347522, at *8 (M.D. Pa. Sept. 29, 2017) (dismissing claim because plaintiff "appears to concede [the deficiency in the claim] by failing to respond to these points"); *Semon v. Maps Indeed, Inc.*, No. 3:14-CV-01593, 2016 WL 930739, at *13 (M.D. Pa. Mar. 11, 2016) (dismissing claim where plaintiffs "do not respond to [defendant's] argument and effectively concede the point"). Here, Williams has no response to a number of Chemstream's arguments, including most strikingly that his payroll and GPS Data records show that he fraudulently over-reported his time worked to Chemstream and received *overpayment* of $15,000 and not *underpayment* as alleged in his Complaint. The most analysis that Williams can muster in opposition is a three-word parenthetical stating that Chemstream somehow is wrong in arguing that it overpaid Williams, Williams Opp. at 8—but he offers no accompanying explanation of how that is so, and no legal authority. If Williams *had* any argument that his fraud did not compromise his own claims and compel dismissal of his Complaint, it would be stated in his Opposition. It noticeably is absent.

Knowing he lacks any substantive response, Williams resorted to another procedural attack, claiming the Court cannot resolve a factual dispute at this stage. Again, Williams is wrong

Page **8** of **10**

because there is no dispute: Where, as here, a plaintiff's "Complaint relies, directly or indirectly, upon a number of … documents referenced in the Complaint," and those documents "contradict the Complaint's factual allegations, the documents will control." *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n. 8 (3d Cir. 1994)); *see Fabricatore v. ADT LLC*, No. CV 16-916 (FLW)(DEA), 2018 WL 3696581, at *5 (D.N.J. Aug. 3, 2018) (the court "need not accept a complaint's allegations if they are 'contradicted by documents incorporated in the pleadings'"). As set forth above, Williams' payroll and GPS Data records are integral to his claims, relied upon in his Complaint, and otherwise are attached to Chemstream's Amended Answer. Whatever factual allegations are contradicted by those documents—including those most critical to his position, such as that he worked unpaid for "2 to 4 hours a day (or 14 to 28 hours a workweek)," Compl. ¶ 55—are entitled to no credit at all, and the documents properly before this Court "will control." As the documents properly before this Court leave no factual disputes for the Court's consideration, Williams' procedural argument fails.

In his last gasp, Williams blames *Chemstream* for his lack of substantive opposition, calling the payroll and GPS Data records *he* referred to in *his* Complaint a "Trojan horse." Williams Opp. at 5. Williams has had over a month to analyze those records. Indeed, in their April 1, 2024 joint filing, the parties stated that Chemstream already had voluntarily "shared with Williams' counsel" records and data demonstrating that it paid Williams for almost 650 hours reported to Chemstream but not worked by Williams. *See* Rule 26(f) Report of the Parties (Dkt. 16) at 3. Williams never responded to Chemstream. Now a month later, Williams presents this Court with zero explanation as to how Chemstream's records show anything other than 11 months of fraudulent overreporting resulting in overpayment to Williams exceeding any amount to which he plausibly could be

entitled. As set forth here and in Chemstream's Motion, the payroll and GPS Data records establish that Williams has been fully compensated for all hours—again, in his words—"actually worked."

## IV. Conclusion

For the foregoing reasons, together with those stated in Chemstream's Motion, Chemstream respectfully requests that this Court grant its Motion for Judgment on the Pleadings, enter judgment in its favor, and dismiss with prejudice Williams' Complaint in its entirety.

Dated: May 3, 2024

/s/ *James S. Urban*
James S. Urban (PA ID No. 82019)
Katherine J. McLay (PA ID No. 320191)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, Pennsylvania 15219
T:412-391-3939
jsurban@jonesday.com
kmclay@jonesday.com

*Counsel for Defendant Chemstream, Inc.*